**NORTHERN LIGHTS INN,
CO., Appellant,**

v.

**EMPLOYMENT SECURITY DIVISION,
DEPARTMENT OF LABOR, State of
Alaska, Appellee.**

No. S–390.

Supreme Court of Alaska.

Feb. 15, 1985.

Kenneth R. Atkinson, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellant.

David T. LeBlond, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Northern Lights Inn, Co. (Northern Lights) appeals the assessment against it of delinquent employment security contributions initially incurred by Cox Enterprises, Inc. (Cox). The Employment Securities

Division of the Alaska Department of Labor (the ESD) contends that Northern Lights is personally liable for Cox's unpaid contributions under AS 23.20.260(c) as a successor to Cox. The Notice of Assessment issued by the ESD on August 26, 1981 states that Northern Lights owes $45,272.39 in unpaid contributions plus interest and penalties.

Lomas & Nettleton Financial Corporation (Lomas & Nettleton) obtained Cox's business property, a hotel including land, buildings and personal property, when it foreclosed on the property under a deed of trust and purchased it with an offset bid.[1] Lomas & Nettleton then conveyed the property to Northern Lights, a wholly owned subsidiary created for the purpose of operating a hotel business on the property. The ESD originally asserted that Northern Lights was liable for Cox's delinquent unemployment security contributions under AS 23.20.250 and AS 23.20.260.[2] The ESD subsequently abandoned its claims for lien liability and relied solely on AS 23.20.260(c) to assert that Northern Lights had become personally liable for Cox's debt.

After a hearing on the ESD's claim, the Commissioner of Labor (the commissioner) issued a decision imposing personal liability on Northern Lights for $31,024.68.[3] The trial court affirmed the commissioner's decision.

■ In interpreting AS 23.20.260(c) we use our independent judgment. *Earth Resources Co. of Alaska v. State Department of Revenue*, 665 P.2d 960, 965 (Alaska 1983). In 1947, AS 23.20.260(c) was enacted as part of a legislative scheme to collect employment security contributions. The intent of this statute is to divert sufficient purchase money from an employer to the state to cover the employer's tax debt when a business is transferred.[4] In order to achieve that end, the purchaser or successor in business is required to withhold consideration from the employer until the employer has furnished proof that its tax debt has been satisfied. If the successor fails to withhold consideration and the tax debt is unpaid after ten days, the successor becomes personally liable for the debt.

■ Statutes similar to AS 23.20.260(c) have been interpreted to apply only in cases in which the successor, through the handling of the purchase money, can protect the state's interest in collecting unpaid

1. In 1971, Cox had granted Lomas & Nettleton a deed of trust and security interest in the real and personal property to secure purchase money and construction loans for the property. Cox then built and operated a hotel on the property. Lomas & Nettleton obtained the property at the foreclosure sale in 1979 with a bid for the amount of Cox's indebtedness to it.

2. AS 23.20.250 provides in relevant part:
    (a) If the assets of an employer are distributed under a court order, ... or in the case of an assignment for the benefit of creditors, a composition, or a similar proceeding, contributions which are or which become due are a lien upon all the assets of the employer. AS 23.20.260 provides:
    (a) The contributions required by this chapter are a lien upon the property of an employer subject to the provisions of the chapter who sells out the business or stock of goods, who quits business, or whose property used or acquired in the business is sold under voluntary conveyance or under foreclosure, execution or attachment, distraint or other judicial proceeding.
    (b) The employer shall file the reports which the department prescribes and pay the contributions required by this chapter with

respect to wages payable for employment up to the date of the occurrence of each contingency.
    (c) The purchaser or successor in business shall withhold enough purchase money to cover the amount of contributions due and unpaid until the employer produces a receipt from the department showing that the contributions have been paid, or a certificate that no contributions are due. If the purchaser or successor fails to withhold purchase money as provided, and the contributions are not paid within 10 days, the purchaser or successor is personally liable for the payment of the contributions accrued and unpaid on account of the operation of the business by the former owner.

3. In arriving at this figure, the commissioner subtracted penalties and interest owed by Cox.

4. The words "purchase money" should not be read literally to permit employers to defeat the purpose of the statute by structuring sales so that no cash is exchanged. *Bank of Commerce v. Woods*, 585 S.W.2d 577 (Tenn.1979).

taxes. *Knudsen Dairy Products Co. v. State Board of Equalization*, 12 Cal. App.3d 47, 90 Cal.Rptr. 533, 538 (1970).[5] That interpretation is consistent with the purpose of successor liability statutes such as AS 23.20.260(c).

■ Essentially, AS 23.20.260(c) puts a successor in the position of a tax collecting agent of the state. The requirement in AS 23.20.260(c) that a successor "withhold purchase money" implies that the successor has the ability to withhold consideration. Therefore, when there is no fund available from which a successor can withhold the amount of the tax debt, the obligation to withhold does not arise. The personal liability imposed by AS 23.20.260(c) is contingent upon the successor's ability to withhold.

■ In the instant case, Northern Lights contends that it was not in a position to withhold purchase consideration from Cox. Northern Lights foreclosed on the Cox property and purchased it with an offset bid for the amount of Cox's debt. Obviously, consideration that can be diverted does not result from the making of an offset bid. Diversion is possible only to the extent that a bid is made in excess of the debt owed.

On the specific facts in this case we are satisfied that Northern Lights' inability to withhold purchase consideration from Cox was *bona fide*. Therefore, Northern Lights had no obligation to withhold such consideration and should not have been assessed for Cox's unpaid taxes.

REVERSED.

**5.** The California successor liability statutes differ from AS 23.20.260(c) in that they apply only to purchasers of a business. However, the statutes are similar to AS 23.20.260(c) in other respects.